IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SAM ALBA,                                          :      CIVIL ACTION NO. **4:CV-04-2235**
                                                   :
        Plaintiff                       :      Magistrate Judge Blewitt
                                                   :
        v.                              :
                                                   :
HOUSING AUTHORITY OF THE CITY                      :
OF PITTSTON, et al.,                               :
                                                   :
        Defendants                      :

## MEMORANDUM

### I. Background.

On October 11, 2004, the Plaintiff, Sam Alba, filed this age discrimination action pursuant

to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* and the PHRA,

42 Pa.C.S.A. §951, *et seq.* (Doc. 1). An Amended Complaint was filed by the Plaintiff on January

10, 2005. (Doc. 11). The Defendants, Pittston Housing Authority ("PHA"), and Andrea Grigas,

Supervisor of PHA, filed their Answer to Plaintiff's amended pleading on February 2, 2005. (Doc.

16). On April 7, 2005, following our Order granting Plaintiff leave, Plaintiff filed his Second

Amended Complaint, and it included, in addition to the stated original claims, an equal protection

claim under 42 U.S.C. § 1983. Also, individual Defendant Gerald Shovlin, Chairman of the Board

of Directors for the Defendant Pittston Housing Authority was added as a Defendant. (Doc. 26).[1]

On April 26, 2005, Defendants jointly field an Answer to Plaintiff's Second Amended Complaint.

---

[1]Shovlin was added as a Defendant to Plaintiff's Count III under the PHRA and he is
included in Plaintiff's § 1983 claim.

(Doc. 28).

Thereafter, discovery ensued.[2]

Defendants jointly filed a Motion for Summary Judgment on June 28, 2005. Defendants' Motion has been briefed by the parties and is ripe for disposition. (Docs. 31, 32, 35, 36, 37 & 42).[3] Additionally, on June 28, 2005, Plaintiff filed a Motion for Partial Summary Judgment. (Doc. 33). Plaintiff's Motion is also ripe. (Docs. 34, 38, 39 & 43).[4]

Plaintiff basically alleges that Defendant PHA had an illegal mandatory retirement plan which required him, an employee of PHA for over ten years, to retire at age 70. Prior to reaching the age 70, Plaintiff was advised that his birthday on April 22, 2004 would be his last day of employment as a mechanic with PHA based on PHA's mandatory retirement policy. Plaintiff's last day with PHA was April 22, 2004. Thereafter, on July 21, 2004, Plaintiff filed a complaint with the EEOC for age discrimination. On September 20, 2004, the EEOC closed its file on Plaintiff's discrimination charge since it found that PHA employed less than the required number of employees or was not otherwise covered by the statutes. (Doc. 35, Appx. 6 & 7). (Doc. 31, attached SMF & Doc. 36, attached SMF).

---

[2] Discovery included depositions which were taken in the case on March 8, 2005.

[3] Defendants' Statement of Material Facts ("SMF") is attached to Doc. 31 and Plaintiff's Statement of Material Facts is attached to Doc. 36.

[4] The parties have consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c). (Doc. 19).

Plaintiff alleges that during depositions, he learned that the PHA Board of Directors approved of the recommendation of Defendant Grigas to terminate him due to his age. Plaintiff then raised his § 1983 equal protection claim regarding the PHA Board's official age 70 retirement policy and his claim that the Board approved of his termination.

Defendants' evidence indicates that during 2003, PHA only had eleven (11) employees, and during 2004, PHA had at the most fourteen (14) employees, but of these, three (3) employees worked less than twenty(20) weeks for this year. Plaintiff disputes this and states that in 2003 Defendant PHA had twenty-three (23) employees, and twenty-six (26) employees in 2004, or, in the alternative, states that PHA and the City of Pittston should be construed as one employer and combined they had well over twenty (20) employees in each of the stated years. (Doc. 31, attached SMF & Doc. 36, attached SMF). Herein lies the basis of Defendants' first argument in support of their Summary Judgment Motion. We shall consider first this issue as to whether PHA had the requisite number of employees for the ADEA to apply to it under the summary judgment standard, as Plaintiff recognizes. (Doc. 36, p. 4). *Carr v. Bor. of Elizabeth*, 121 Fed. Appx. 459, 460 (3d Cir. 2005) (Non-Precedential) (Twenty employee threshold of ADEA was not jurisdictional but was substantive element, *i.e.* whether an employer exists, of an ADEA claim). Thus, we do not apply the standard under Fed. R. Civ. P. 12(b)(1) to this issue. Rather, we must construe the evidence in a light most favorable to Plaintiff as the nonmoving party. *Carr, supra.*[5]

_____

[5]In a case cited by Defendants, the *Verdecchia* Court, in a decision prior to *Carr*, stated that the twenty (20) employee requirement was a jurisdictional requirement for Plaintiff's federal employment age discrimination claim. *See Verdecchia v. Douglas A. Prozan, Inc.*, 274 F. Supp. 2d 712, 720 ( W.D. Pa 2003)("Whether a defendant-employer has ... 20 (for an ADEA claim) or more employees is a jurisdictional requirement for Plaintiff's federal employment

As discussed below, we agree with Defendants and we will grant their Summary Judgment Motion with respect to Plaintiff's ADEA claim, Count I, and § 1983 claim, Count IV. (Counts I and IV of Second Amended Complaint, Doc. 26). We shall also decline to exercise our supplemental jurisdiction over Plaintiff's remaining state law claims (*i.e.* PHRA claims) (Counts II and III).

## II. Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A fact is "material" if proof of its existence or non-existence could affect the outcome of the action pursuant to the governing law. *Anderson*, 477 U.S. at 248. "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.*, 25 F. 3d 194, 197 (3d Cir.), *cert. denied*, 513 U.S. 1022 (1994).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id.* The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions,

---

discrimination claims."). Since the *Verdecchia* case, the Third Circuit in *Carr* has rejected this view that the twenty (20) employee requirement of an ADEA claim is jurisdictional.

answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.*, quoting *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied*, 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. ADEA Standards.

The ADEA provides that:

> "[I]t should be unlawful for an employer to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(2).

Thus, "the ADEA prohibit[s] employers from discriminating against qualified individuals on the basis of ... age." *Verdecchia*, 274 F. Supp. 2d at 719. *See* 29 U.S.C. § 623(a)(1). An employer is defined in the ADEA as follows:

> a person engaged in industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . 29 U.S.C. § 630(b).

5

29 U.S.C. § 630(b).  *Verdecchia*, 274 F. Supp. 2d at 719.

In *Duffy v. Paper Magic Group, Inc.*, 265 F. 3d 163, 167 (3d Cir. 2001), the Third Circuit

stated the following elements to establish an ADEA age discrimination claim:

> The ADEA prohibits employers from discriminating against individuals
> in hiring, discharge, compensation, term, conditions or privileges of
> employment on the basis of their age. *See* 29 U.S.C. § 623(a)(1).  Age
> discrimination may be established by direct or indirect evidence. *See*
> *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998) When
> evaluating ADEA discrimination claims based on indirect evidence, a
> plaintiff may establish a prima facie case of age discrimination under
> the ADEA by demonstrating that she: (1) was a member of a
> protected class, i.e., that she was over forty, (2) is qualified for the
> position, (3) suffered an adverse employment decision, (4) and was
> ultimately replaced by a person sufficiently younger to permit an
> inference of age discrimination. *See id.* at 973.

The *Duffy* Court also noted that:

> A prima facie case creates an inference of unlawful discrimination.
> The burden of production then shifts to the employer who can dispel
> the inference by articulating a legitimate, nondiscriminatory reason for
> its actions. *See Connors*, 160 F.3d at 974 n. 2.  If the employer
> meets this burden, the employee must then prove by a
> preponderance of the evidence that the articulated reasons are  a
> pretext for discrimination. *See id.*  Where the employee is
> unable to establish a prima facie case, however, no inference of
> discrimination is raised and the employer has no burden to proffer
> a reason for any action. *Spangle v. Valley Forge Sewer Auth.*,
> 839 F.2d 171, 174 (3d Cir. 1988).

*Id.*

The ADEA does not allow "age discrimination by employers against employees and

applicants for employment." *EEOC v. Zippo Mfg. Co.*, 713 F. 2d 32, 35 (3d Cir. 1983) (citations

omitted).  Further,  this Court has held that the Plaintiff must allege an actual or *de facto*

employment relationship with a Defendant as a requisite to an age discrimination claim under the

ADEA. *See Tyrrell v. City of Scranton*, 134 F. Supp. 2d 373, 380  (M.D. Pa. 2001).  Here, Plaintiff

was undisputedly an employee of Defendant PHA. (Doc. 31, SMF).  However, if Defendant PHA

is not an employer for purposes of the ADEA, Plaintiff's ADEA claim must fail since Plaintiff will

have not met a substantive element of his claim.[6]   *See Carr*, 121 Fed. Appx. at 460.

We must decide if the individuals identified by Plaintiff are employees of PHA in addition

to those who the Defendants concede are employees.  This issue must be resolved under the

summary judgment standard.  *Id.*  As stated, Defendants claim that in 2003, PHA had eleven (11)

employees and that in 2004, PHA had at most fourteen (14) employees. (Doc. 31, SMF, ¶'s 12.-

13.).  Plaintiff claims that PHA had twenty-three (23) and twenty-six (26) employees for the

respective years.  (Doc. 36, SMF, ¶'s 12.-13.).  Specifically, Plaintiff argues that the Pittston City

police officers who patrol PHA's projects, and that the PHA Solicitor (Attorney Butera) and Financial

Consultant (CPA Lisak) are all employees of PHA.  Defendants contend that these individuals are

not employees of PHA; rather, they are independent contractors.

### A. Employee Under the ADEA.

As the *Verdecchia* Court stated "the ADEA offer[s] [a] circular definition[s] of the term

'employee,' defining it as an individual employed by an employer." *Id.* Citing 29 U.S.C. § 630(b).

The *Verdecchia* Court then stated as follows:

> "The law is now clear that where the statute does not
> helpfully define the term 'employee,' courts are to use
> a common-law agency test to determine employee status."

---

[6]The Defendants claim in this case that PHA was not an employer as defined in the
ADEA. 29 U.S.C. § 630(b).  The PHRA definition of "employer" includes any board employing
four (4) or more persons in Pennsylvania. [43 P.S. § 954(b).] (Doc. 32, p. 4).

> *Jean Anderson Hierarchy of Agents v. Allstate Life*, 2 F.Supp. 2d
> 688, 693 (E.D. Pa. 1998), citing *Nationwide Mutual*
> *Insurance Co. v. Darden*, 503 U.S. 318, 322, 112 S.Ct. 1344,
> 117 L.Ed.2d 581 (1992). *See also Walker v. Correctional*
> *Medical Systems*, 886 F.Supp. 515, 520 (W.D. Pa. 1995)
> (concluding that *Darden* requires application of the common-law
> agency test in determining employee status under Title VII).
> "Under this test, all of the incidents of the relationship
> must be assessed and weighed with no one factor
> being decisive. . . . " *Jean Anderson Hierarchy*,
> 2 F.Supp. 2d at 693.

*Id.* at 720-721.

### B. Relationship of Claimed Employees and Defendant.

We are presented with the question of whether the stated individuals identified by Plaintiff

were employees of Defendant PHA within the meaning of the ADEA. Generally, when there are

no material facts in dispute, this issue is a question of law for the court to determine. *See Stouch*

*v. Brothers of the Order of Hermits of St. Augustine*, 836 F. Supp. 1134, 1142 (E.D. Pa.

1993);*Strange v. Nationwide Mut. Ins. Co.*, 1997 WL 550016, *2 (E.D. Pa.). However, if there is a

genuine issue of fact or conflicting inferences can be drawn from the undisputed facts, then the

determination of the employment status is a question of fact for the fact finder to resolve. *Id.* Also,

as the Court in *Carr* directed, we must construe the evidence in a light most favorable to Plaintiff.

*Carr, supra.*

Both parties agree upon the standard to be utilized by the court in deciding the employee

issue, namely the standard annunciated by the Supreme Court in *Nationwide Mutual Ins. Co. v.*

*Darden*, 503 U.S. 318, 323-24, 112 S.Ct. 1344 (1992); *Verdecchia*, 274 F. Supp. 2d at 721.   (Doc.

32, p. 7 & Doc. 36, p. 4).

The *Darden* Court looked to the general common law of agency in determining whether a hired person is an employee. *Id.* The *Darden* Court stated that "[i]n determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished." *Id.*

The other relevant factors identified by the *Darden* Court were as follows:

> Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party."
> 490 U.S. at 751-752, 109 S.Ct. at 2178-2179 (footnotes omitted).

*Id.*

The *Darden* Court also stated that:

> Since the common-law test contains "no shorthand formula or magic phrase that can be applied to find the answer, . . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *NLRB v. United Ins. Co. of America*, 390 U.S. at 258, 88 S.Ct., at 991.

*Id.* at 324 (citation omitted).

The *Darden* Court indicated that courts should use the common law agency test to determine if a person is an employee when statutes do not helpfully define this term. *See Verdecchia*, 274 F. Supp. 2d at 721. The definition of employee under the ADEA is not helpfully defined. In the ADEA, "employee" is defined as "an individual employed by any employer." 29 U.S.C. § 630(b). Under the common law agency test, which must be used in this case, the hiring

party's right to control the manner and means by which the work is accomplished is emphasized, as well as consideration of a list of the specified factors and analysis of the totality of the circumstances. *Frankel v. Bally, Inc.*, 987 F. 2d 86, 90 (2d Cir. 1993).

Defendants maintain that during the relevant time periods, PHA employed eleven (11) people in 2003 and up to fourteen (14) people in 2004. Defendants have offered evidence to support their position, namely the PHA payroll for each month of 2003 and 2004, with the names of employees listed. (Doc. 35, Appx. 8 & 9). Defendants also submit the Affidavit of Defendant Grigas, in which she verifies the yearly payrolls of PHA and avers that during the stated years, PHA had less than twenty (20) employees. (*Id.*, Appx. 14). Three (3) employees hired by PHA in 2004 were only seasonal employees and worked less than the required twenty (20) weeks. (*Id.* & Appx. 5, NT 22). The stated payroll records support the number of employees which Defendants attribute to PHA for 2003 and 2004, absent the City Police Officers, and PHA's CPA and Solicitor. We do not find that Plaintiff has submitted any evidence to controvert the number of employees which Defendants claim that PHA had for 2003 and 2004. (Doc. 36, SMF). Rather, Plaintiff's evidence goes to the issue of whether the City Police Officers, CPA and Solicitor hired by PHA were employees of PHA.[7]

There is no dispute between the parties that PHA contracts with the City of Pittston for off-duty police officers to patrol PHA's projects. (Doc. 35, Appx. 14 & 10). Further, there is no dispute

---

[7]Grigas also acknowledges that PHA does have a mandatory retirement policy adopted in February 1978. As mentioned, there is no dispute that this policy was utilized in Plaintiff's case and that PHA required him to retire in April 2004 when he reached 70 years. (Doc. 35, Appx. 14).

that PHA had contracts with Solicitor Butera and CPA Lisak with respect to their legal and financial consultant services, respectively, for the PHA.  (*Id.*, Appx. 14, 11, 12).   Defendants argue that the Police Officers, Lisak and Butera were, under common law, independent contractors and not employees of PHA.   The question now arises as to whether these contracted persons were employees of PHA for purposes of the ADEA.   We apply the *Darden* factors, as both parties do in their Briefs.  (Doc. 32, pp. 7-10 & Doc. 36, pp. 7-10).

Plaintiff points out that the contracts between PHA and the CPA and Solicitor stated that they covered employment and that PHA employed the CPA.   The contract between PHA and the City indicated that the Police Officers were to provide specific support services to PHA and support services as requested.  (Doc. 36, p. 6).   Plaintiff, in part, bases his claim that these persons were employees of PHA upon the terms of the contracts.   However, the contracts do not in and of themselves dispose of the question of whether the stated people were employees of PHA for purposes of the ADEA.   The fact that the Police Officers, CPA and Solicitor had employment contracts with PHA is not dispositive of the employment relationship they had with PHA.   *See Stouch*, 836 F. Supp. at 1139.   Plaintiff concedes this much, but states that the terms of the contracts go to show that the stated workers were employees of PHA and not independent contractors.   We agree that the contracts cannot be ignored and must be considered.  (Doc. 36, pp. 6-7).  *See Strange, supra* at * 4.  ("Where parties have reduced their agreement to writing, courts may ascertain the parties' intent by examining the writing.") (citation omitted).

There is no question in this case that a formal relationship between PHA and the stated workers was formed and was reduced to writing by virtue of the contracts  executed by the parties.

11

(Doc. 35, Appx. 10, 11, 12). The Security Agreement between PHA and the City stated that "Off-duty police officers while working [i.e. patrolling PHA's projects] shall be in full uniform and covered by the City of Pittston." (Doc. 35, Appx. 10). The Agreement for Legal Services with Butera provided that he would accept employment to provide legal services required by PHA in the operations of its projects. (Id., Appx. 11). The Financial Consultant Agreement with Lisak provided that PHA employs him as financial consultant to monitor accounting records and complete required financial reports. (Id., Appx. 12).

Thus, when considering the Agreements PHA had with the City, Butera and Lisak, we find that the clear intent of the parties was that the Police Officers, Solicitor and Financial Consultant were independent contractors, and not employees of Defendant PHA. As Defendants argue in their Reply Brief, there is no evidence that these people were dependent upon PHA for their livelihood. We agree. Further, as Defendants indicate, under their respective contracts, Butera was paid $14,000 yearly, and Lisak was paid $3600. (Doc. 42, p. 2). The contract with the City specified that off-duty police officers would patrol PHA projects and provide security. As stated, they were to be in uniform and covered by the City while working for PHA. Defendants correctly state that the monthly invoices from the City to PHA for the off-duty Police Officers show that each officer only worked about 5 to 10 hours per month. (Doc. 35, Appx. 10). Plaintiff's evidence also shows this. (Doc. 36, SMF, attached monthly City invoices for Police Officers to PHA).[8]

---

[8]Occasionally, Officer Porfirio worked 12 hours per month.

12

We now consider the *Darden* factors. As the *Verdecchia* Court stated, and as both parties indicate, the most emphasis of the *Darden* factors is placed on the right to control, by the hiring party, the manner and means that the work is accomplished. 274 F. Supp. 2d at 721. (Citations omitted).

### C. Darden Factors.

1. Control.

Plaintiff argues that PHA controlled the workers in question, since the Police Officers used PHA's vehicles and patrolled only its projects and provided support services as requested by PHA. Plaintiff argues that PHA controlled Solicitor Butera since he performs all of PHA's legal work and since the PHA Board directs him on what to do and he needs Board approval for his work. As to CPA Lisak, Plaintiff states that he receives a fixed compensation from PHA, as well as dental insurance, which is only provided to employees. (Doc. 36, p. 7).

Defendants contend that the Police Officers provided security at PHA's projects while wearing their police uniforms and were covered by the City under the terms of the Security Agreement. Defendants state that PHA did not exercise any control over the manner of the Officers' performance of their duties under the Agreement. The contract provided that the Police Officers were to handle all calls and make any necessary arrests in the housing projects. The power to make arrests and handle calls comes from the City which employs the Officers. There is no evidence, and the law does not permit, PHA to control the officers as to which calls would result in arrests and which ones would not or as to how the Officers would make an arrest and handle any calls. Rather, the Officers were under the control of the City and its authority thereunder with

13

respect to these responsibilities. It would be in the execution of the Police Officer's official duties to arrest someone at a PHA project even though the Officer was off-duty. The Officer was to be in full uniform with his badge, and this signifies that he acted with official authority at the time of the PHA patrols. *See Pokalasky v. S.E. PA Transp. Auth.*, 2002 WL 1998175 (E.D. Pa.). Further, there is no evidence that PHA controlled how the Police Officers would conduct their patrols and their additional support services at the projects. Also, as Defendants state, PHA did not train the officers and did not direct, supervise or evaluate their activities. (Doc. 35, Appx. 10, Appx. 5, NT 16-18, Appx. 14, ¶ 18.). The Police Chief did the scheduling for the Officers, and the Police determine which projects to patrol and when, as well as how to patrol. (Doc. 35, Appx. 5, NT 16-18).

In sum, with respect to the Police Officers, we find that they were not controlled by PHA and were at all times employees of the City.[9]

As to Butera, as stated above, he has a contract with PHA which provided that he is legal counsel to PHA and will provide it with all legal services it requires in the operation of its projects. (Doc. 35, Appx. 11). He was to advise PHA on legal matters when requested. He is paid $14,000 per year and receives no benefits. While it is not disputed that PHA controlled all legal work

---

[9]We find the services performed by the Police Officers for PHA were similar to the services which the Courtroom Security Officers (CSO's) provide to this Court. We concur with the finding of the Court in *Wilson v. MVM*, Civil No. 03-4514 (E.D. Pa. 4-1-04), 2004 WL 765103 (E.D. Pa.) and 2004 WL 1119926 (E.D Pa.), that CSO's are not federal employees for the purposes of the ADEA based on the 13-factor agency test of *Comm. For Creative Non-Violanec v. Reid*, 490 U.S. 730 (1989). *See also McGovern v. MVM, Inc.*, 2004 WL 2554565 (E.D. Pa.); *Leitch v. MVM, Inc.*, 2004 WL 1638132 (E.D. Pa.).

assigned to Butera related to its projects, it did not control the legal opinions he rendered or the manner in which he advised PHA to act within the law on any given legal question. Thus, PHA did not control the manner of Butera's performance; rather, it only controlled the topics assigned for his legal opinions and advise. Butera was responsible for ensuring the legal advice he provided was in compliance with the law.

As Plaintiff states, CPA Lisak did receive dental insurance from PHA, but he paid for this himself. (Doc. 35, Appx. 5, NT 28, 53). He also receives a fixed amount of compensation as Plaintiff states, but it is only $3600 per year. (Id., Appx. 12).[10] Lisak maintained and monitored accounting records necessary to keep PHA in accordance with HUD regulations, and HUD required PHA to obtain services of a consultant familiar with its Capital Fund Program. As with Butera, Lisak's financial advice and services he provided to PHA are governed by the contract, but there is no evidence that PHA controls the manner and means by which he accomplishes this work or how he completes required records and monitors them. The evidence also reveals that Lisak had his main job with the Housing Authority of Scranton and "with Pittston he is a contract cost." (Id, Appx. 5, NT 51-52).

Further, there is no evidence that PHA exercised control over any of the stated workers' daily activities.

Under the first and most significant *Darden* factor, *i.e.* control, considering the totality of the circumstances in this case, we find it weighs in favor of a determination that the police officers,

---

[10]This small annual fee CPA Lisak received also supports Defendants' position that he was not an employee of PHA.

Butera and Lisak are independent contractors of PHA and not employees.

2. Skill Required.

Plaintiff states that the use of special skills is not indicative of whether the worker was an independent contractor if they do not use the skills in an independent way. Plaintiff states that the workers here were not given any control over the day-to-day operation of PHA. (Doc. 36, p. 8). The Police Officers used their skills they had as law enforcement personnel with the City to patrol PHA's projects. They used their police uniforms and their police training to perform the contracted tasks. PHA did not train the officers, nor did it direct, supervise or evaluate their activities. (Doc. 35, Appx. 14, ¶ 18.).

The skills required by Attorney Butera were his legal skills, which were not ascertained from PHA. Likewise, the skills required by CPA Lisak were his accounting skills not derived from PHA. There is no evidence that PHA trained these professional or that they had to attend any meetings or seminars. There is no evidence that PHA was responsible for the stated professionals' license fees and for ensuring compliance with state CLE requirements. Although PHA requested legal services and accounting services from Butera and Lisak, as discussed, they were free to determine the manner and means of how they completed their professional advice and what advice they rendered.[11]

---

[11]This Court has held that "[a]ttendance at ... meetings and preparation of reports is not an indication of employee status; it does not indicate ... supervision or control of ones's daily activity." *See Samson v. Harvey's Lake Borough*, 881 F. Supp. 138, 143 (M.D. Pa. 1995).

### 3. Source of Instrumentality and Tools.

Plaintiff states that the Police Officers used PHA's vehicles while patrolling its projects. (Doc. 36, p. 8, ¶ C.). Defendants do not dispute this, and the contract shows that the Officers used PHA's vehicles. (Doc. 35, Appx. 10, Appx, NT 16). However, the contract also reveals that the Police Officers were to be in their full uniforms, that they were covered by the City during their patrols, and that the City Police Chief determined the Officer's schedule. (Id.).

There is no evidence that PHA provided CPA Lisak or Attorney Butera with any of the tools and professional resources they may have needed to render their contracted services to it. There were no specific professional requirements with which PHA mandated compliance by the stated Solicitor and Financial Consultant. (Doc. 35, Appx. 11 & 12).

### 4. Location of Work.

The Security Agreement with the City stated that Police Officers would patrol PHA's projects. The Officers' schedules, evaluations and manner and location of their specific  patrols was controlled by the City, as discussed.  The Solicitor provided legal services and the Accountant provided financial services to PHA. They work for PHA as needed. (Doc. 35, Appx 5, NT 18–20). Lisak worked off-duty hours, as did the Police Officers.  There was no requirement in the contracts with the Solicitor and CPA that they had to perform their work at PHA's offices or sites, although the Solicitor had to attend meetings. (Id., Appx. 10–12).  However, the designation of any of the workers' location of work, absent PHA's control over the  work itself and the manner in which it was performed, do not make the workers employees of PHA.

17

5.  Length of Time.

As Plaintiff states, it is undisputed that Butera had been Solicitor for PHA since the 1980's and that Lisak had been rendering services to PHA since 1970's. (Doc. 36, p. 8-9).  Plaintiff indicates that the Police have been patrolling PHA's projects for the past ten (10) years. (Id.). (Doc. 35, Appx. 5, NT 17, 19, 30).  However, none of the workers have been shown to be full-time with PHA during any of their tenures.  Rather, the off-duty Police patrol PHA projects about four (4) hours per night four (4) days per week, and the CPA and Solicitor work for PHA as needed.  Thus, while PHA and the workers had considerably lengthy relationships of numerous years, they were not on a full-time basis and were limited in terms of compensation.  They received no pensions or paid benefits from PHA.  The evidence shows, as discussed, that the work of these people was all supplemental to their full-time duties and work.

6.  PHA's Right to Assign Additional Projects to Plaintiff.

As mentioned, PHA could request the Police Officers to provide support services such as background checks and vehicle registration and additional support services.  The City scheduled and evaluated all of its Officer's work for PHA.  The Solicitor and CPA were to provide legal and financial services provided by their contracts, as needed by PHA.

7.  Discretion of Workers over When and How Long to Work.

Plaintiff does not dispute that the City had complete autonomy in setting the work schedule of the Police Officers.  The evidence shows this fact and the fact that the Officers patrolled four (4) hours per night, four (4) days per week.  (Doc. 35, Appx. 5, NT 16).  The evidence also shows that CPA Lisak worked as needed.  (Id., NT 19).  There is no evidence that PHA required any of these

18

workers, including Butera, to work on a full-time basis. PHA does not determine the Officers' patrol routes. (*Id.*, NT 17-18). There is no evidence that the Solicitor and CPA had to work a certain number of hours per month for PHA. (*Id.*, Appx 11-12). While the PHA Board directs Butera's PHA legal work for it, there is no evidence that this work required a certain number of hours per week or month or that this was Butera's exclusive legal practice. Thus, the workers could work flexible hours, and PHA did not control their daily schedules and the length of hours which they worked. Nor did PHA directly supervise the workers in the day-to-day performance of their work. Thus, the work of the Police Officers, the Solicitor, and the CPA was not controlled with any specific detail by PHA. *Darden* factor number 7 weighs in favor of Defendants' position that the workers were independent contractors and against Plaintiff's position.

8. Method of Payment.

The evidence shows that the Police Officers were paid an hourly rate for the hours they worked. The Police Chief submits an invoice to PHA at the end of each month, and PHA pays it. (Doc. 35, Appx. 10 & Appx. 5, NT 17). PHA does not know the Officer's schedules or know who is working each day and what hours. (*Id.*). The Solicitor and CPA work as needed and they are paid a fixed amount under their contracts. (*Id.* Appx 11-12). Lisak gets paid from various funds, three checks a month. (*Id*, Appx. 5, NT 19-20). Butera gets paid by PHA from the general fund at contract cost on a monthly basis. (*Id.*, NT 30).

There is no evidence that PHA paid these workers any fringe benefits, retirement benefits, sick day pay or vacation pay. Further, the evidence shows that PHA did not pay for any insurance benefits for any of the stated workers. (*Id.*, NT 28).

19

9. Worker's Role in Hiring and Paying Assistants.

As Defendants state (Doc. 32, p. 7), there is no evidence that any of the stated workers could hire and pay any assistants. The contracts with these workers did not provide for any hiring of assistants. Therefore, we find that the workers could not have hired any assistant or contracted with any assistant which would have rendered that assistant in any way affiliated with PHA or an employee of PHA. Additionally, the contracts did not indicate that the workers could assign any of their rights as to their work for PHA to any other party. (Id. Appx. 10- 12).

10. Regular Business of Employer.

Under the Agreements with the stated workers, the services which they performed were as follows: patrol and security services (Police); financial services (CPA); and legal services (Solicitor). Plaintiff argues that this was all part of the regular business of PHA of providing safe, legal, and financially acceptable housing to Pittston residents. (Doc. 36, p. 9). We agree with Plaintiff to the extent that these services were incident to PHA's undisputed business of providing low-cost housing with an operating subsidy from the federal government, i.e. HUD. (Doc. 35, Appx. 5, NT 14). PHA generates income from rent payments of its units. It modernizes its units and receives HUD subsidies. (Id.). It also has a Section 8 housing program in which it subsidizes rents. (Id., NT 19). The stated workers perform services necessary for PHA's housing services, but these services are clearly not the regular business of PHA.

11. Whether the Workers were in Business.

There is no question that the Police Officers were in business of protecting the residents of Pittston, that the Solicitor was in business of providing legal advice and services, and that the CPA

was in business of providing financial advice and accounting services. None of these workers were in the business of providing low-cost housing to residents.

12. <u>Provision of Employee Benefits</u>.

The Security Agreement provided that the Police Officers would use PHA's vehicles but that they were to be in their full police uniforms and be covered by the City. Thus, while PHA was responsible for providing the police with vehicles for patrols, PHA did not pay any fringe benefits to the officers. The CPA and Solicitor did not receive any PHA paid benefits, as discussed.

Additionally, the Agreements do not show that these workers had full benefit status with PHA, as discussed above. In fact, the workers were not provided any benefits whatsoever by PHA. Additionally, the police had no set salary by PHA. PHA had set contract costs with the Solicitor and CPA. (Doc. 35, Appx. 5, NT 18, 28, 30). None of the workers were guaranteed any additional earnings or profits by PHA.

13. <u>Tax Treatment of Workers</u>.

There is no evidence that PHA paid any taxes for the workers. They get monthly checks, which are contract costs. The Agreements do not provide that PHA had to pay taxes for the stated workers or that it would pay the licenses and certificates of the workers necessary to perform their services.

Thus, we find that the workers had to pay their own taxes and obtain their own licenses. Further, there is no evidence that PHA paid, contributed to or withheld the workers' Social Security taxes or any other type of taxes on earnings. Nor is there any evidence that PHA deducted the workers' federal, state or local tax liability from their checks. We thus find that these tax obligations

21

were the worker's responsibilities.  Thus, in addition to PHA not providing the stated workers

benefits, and not requiring them to work a certain number of hours, it had no tax responsibilities

with respect to them. (Doc. 35, Appx. 14, ¶ 25.).

Based upon the totality of the circumstances, we find that the majority of the factors weigh

against the stated workers being considered employees of PHA.  The written agreements between

the parties clearly indicated that their relationship was intended to be one of independent

contractor, and not employee and employer.  From consideration of the aforementioned factors

and based upon the undisputed record, viewing the evidence in a light most favorable to Plaintiff,

we conclude as a matter of law that the Police Officers, CPA and Solicitor were not employees of

PHA.  Therefore, we find that the workers identified by Plaintiff as employees of PHA are

independent contractors with respect to determining whether PHA had the required number of

employees to render it an employer under the ADEA.  We also do not find that Plaintiff has

controverted Defendants' evidence that PHA had fewer than twenty (20) employees during the

relevant times of 2003 and 2004.[12]  We also agree with Defendants (Doc. 42, p. 2) that Plaintiff's

unsubstantiated Affidavit is insufficient to show PHA had more than twenty (20) employees. (Doc.

33, Plaintiff's Depo. NT 19).  On the contrary, Defendants have shown through their evidence that

PHA did not have twenty (20) employees during the stated years. (Doc. 35, Appx. 14).  Grigas's

Affidavit, unlike Plaintiff's, is supported by the monthly employment records of PHA for the relevant

---

[12]We also agree with Defendants that the three seasonal employees who worked for
PHA in 2004 were not counted as employees for purposes of the ADEA since they did not work
the required twenty (20) weeks. (Doc. 35, Appx. 9 & Appx. 14, ¶'s 12.-15.).

years.[13]

For the above reasons, we find that the stated workers were not employees of PHA for purposes of his ADEA claim. Thus, since PHA was not an employer under the ADEA, Plaintiff has failed to establish a substantive element of his ADEA claim.

### D. Whether PHA and the City of Pittston are a single employer.

Plaintiff contends that PHA and the City of Pittston are a single employer and as such, they had well over twenty (20) employees for the relevant years. Plaintiff states that the Mayor of Pittston is the Controller of the City and PHA. Plaintiff states that the Mayor appoints and terminates all Board members. Plaintiff points to Grigas's deposition testimony in which she stated that the PHA board members are appointed by the Mayor and Council, and that the Mayor has terminated a Board member in the past. (Doc. 33, Ex. A, NT 15, 50). Plaintiff states that the Security Agreement between the City and PHA shows that the Mayor and PHA controlled the payment to the Police, and he relies on Defendants' Brief (Doc. 32, p. 8) wherein they argue that the Police were under the control of the City and not PHA. (Doc. 36, p. 11).

Plaintiff and Defendants both cite to the *Daliessio v. Depuy, Inc.*, 1998 WL 24330 (E.D. Pa.), for the standard for determining whether two separate entities are a single employer. (Doc. 36, p. 11 & Doc. 42, p. 4). We agree with Defendants that, under the *Daliessio* single employer standards and the joint employers test of *NLRB v. Browning-Ferris*, 691 F. 2d 1117 (3d Cir. 1981), PHA and

---

[13]While Defendants point to the fact that the EEOC found that PHA did not employ the required number of employees to be considered an employer under the ADEA, (Doc. 32, p. 9), we base our finding of this fact on our application of the *Darden* factors as discussed above.

Pittston City were neither a single employer nor a joint employer. (Doc. 42, pp. 4-5).

Defendants maintain that the City did not have complete control over the PHA Board, that the Board does not report to the City, and that the City does not provide any monies to PHA. Defendants point to Grigas' deposition for support. (Doc. 32, p. 9). Grigas testified as Defendants indicate. (Doc. 35, Appx. 5, NT 10, 14-15). Grigas also testified that PHA and the City are separate entities, that PHA has its own Article of Incorporation, and that the Board does not report to the City. PHA employees are paid from rents collected from PHA housing units. PHA receives subsides from HUD for projects, and it has a Section 8 voucher program in which it subsidizes rents within the City. (*Id.* NT 15-19). Board members are not paid for their duties and are appointed by the Mayor and City Council for five-year terms. Similar to the appointment of federal judges by the executive, in which both branches of government still remain separate and distinct, simply because PHA board members are appointed by the Mayor and City Council does not mean that PHA is controlled, managed and owned by the City. Additionally, Plaintiff offers no evidence to contest Defendants' evidence that the City provided no financial support to PHA, and, as discussed below, that PHA was legally incorporated in Pennsylvania as a non-profit organization.

Further, Defendants state that PHA is a non-profit corporation with its purpose to provide housing for low and moderate income families. Defendants submit the 1973 Articles of Incorporation for PHA. (Doc. 35, Appx. 15). We find that PHA is indeed a separate legal entity from the City of Pittston. The City cannot dissolve PHA, a duly incorporated non-profit organization under the laws of Pennsylvania. The City cannot control the assets of PHA, a separate legal entity. There is no evidence that any of PHA properties are under common ownership with the City.

There is no evidence that the City controls any of PHA's employees, other than that it appoints PHA Board members. While PHA contracts with the City for its off-duty Police Officers to patrol its projects, showing a degree of functional integration of operations, there is not control of the Police by PHA, as we have found above, and there is no common management of either the Police by PHA or of PHA employees by the City. Grigas avers the same in her Affidavit. (Doc. 35, Appx. 14, ¶'s 26.-28.). She also avers that PHA has a Capital Fund Program Budget approved by HUD through which it receives an operating subsidy from HUD. (Id., ¶'s 28.-30.). Also, HUD, not the City, approves PHA's budget. (Doc. 35, Appx. 12). There is no evidence that the City provides any monetary support to PHA. In fact, the uncontested evidence reveals that the City does not provide any money to PHA. (Id., Appx. 5, NT 14-15). Further, we do not find, simply because the Mayor and Council appoint the PHA Board members for five-year non-paying terms and because the Mayor terminated a Board member in the past since the member moved out of the City, that this is sufficient to show that the City and PHA are a single employer. (Id., NT 50).

Moreover, there is no evidence that the PHA and the City share office space, that the City controlled any of PHA's records, including employment records, and that the City and PHA had joint employment. There is no evidence that the two legal entities combine payroll or any other financial records.

There is evidence, however, that Plaintiff received benefits from PHA such as a pension plan. PHA provides its own benefits to its employees. PHA's Executive Director does not report to the City. PHA's Board does not report to the City. PHA's Board hires its own employees. (Doc. 35, Appx. 5, NT 10-14, 27-28). Thus, we find no genuine issue of material fact that PHA and the City

25

are separate legal entities and employers.

### E. Section 1983 Claim.

As stated above, we granted Plaintiff leave to file a Second Amended Complaint in which he added a § 1983 claim against all Defendants. Initially, we agree with Defendants that our Order granting Plaintiff leave to amend his pleading does not control our present inquiry as to whether there is a genuine issue of fact with respect to Plaintiff's § 1983 claim. (Doc. 42, p. 7). The standards for determining a motion to amend a pleading and a summary judgment motion are clearly different.

Defendants argue that the ADEA provides the exclusive remedy for Plaintiff's age discrimination claim and hence Plaintiff's § 1983 equal protection claim should be dismissed.

Defendants, in opposing Plaintiff's Motion to file a second amended complaint, argued that the proposed new Count of the Second Amended Complaint , i.e., the § 1983 Equal Protection claim, would be subject to dismissal because the Plaintiff has the ADEA as his exclusive remedy for an age discrimination claim and that this Act bars Plaintiff's § 1983 claim. The Plaintiff disputed this contention and stated that he could bring his age discrimination claim both under an anti-discrimination law (ADEA) as well as § 1983.

We indicated in our April 6, 2005 Order granting Plaintiff's Motion that we were cognizant that courts have held that a *Bivens* civil rights constitutional claim of age discrimination (federal equivalent to § 1983) is barred by the comprehensive remedial scheme of the ADEA. *See Newmark v. Principi*, 262 F. Supp. 2d 509, 519 (E. D. Pa. 2003). As we previously stated, the *Newmark* Court also cited to the following similar cases holding that the ADEA is the exclusive federal remedy for

26

a claim alleging age discrimination in federal employment:

> *See Bumpus v. Runyon,* No. 94 Civ. 2570 (DC), 1997 WL 154053
> at *6 (S.D.N.Y. Apr. 2, 1997) (holding that "to the extent
> [plaintiff's] constitutional claims arise out of the alleged [age]
> discrimination against plaintiff, those claims are barred by . . .
> the ADEA") (citing *Brown v. General Services Admin.,* 425 U.S.
> 820, 825, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)); *Tapia-Tapia v.
> Potter,* 322 F.3d 742, 745 (1ˢᵗ Cir. 2003) ("To the extent that
> [plaintiff's constitutional] claims are a mere restatement of his age
> discrimination claim, they are not justiciable. The ADEA provides
> the exclusive federal remedy for age discrimination in employment.").

*Id.*

> The *Newmark* Court further stated:

> The Third Circuit has held that Congress intended the ADEA to
> preempt *Bivens* claims against agency officials for age
> discrimination in federal employment. *See Purtill v. Harris,*
> 658 F.2d 134, 137-38 (3d Cir. 1981) (analyzing *Bush* and holding
> that "in light of the existence of ADEA remedies the [federal]
> employer-employee relationship . . . is a special factor that
> counsels hesitation in recognizing a constitutional cause of
> action absent affirmative contrary indications from Congress.");
> *Madden v. Runyon,* 899 F.Supp. 217, 225 (E.D. Pa. 1995)
> (stating that "the exclusive remedy for federal employment age
> discrimination is the ADEA" and barring plaintiff's *Bivens* claim
> that "merely mirrors his claims under . . . the ADEA") (citing
> *Purtill,* 658 F.2d at 137).

*Id.*

We then stated in our April 6, 2005 Order that very recently the Third Circuit in *Cochran v. Pinchak,* 2005 WL 589434 (3d Cir. March 15, 2005), held that remedies provided by Title II of the ADA, with respect to alleged discrimination against a disabled prisoner, were not congruent and proportional to the prisoner's § 1983 claims under the Equal Protection Clause. (Doc. 25). Thus, we held in our case, that Plaintiff's proposed § 1983 claim, if alleged properly, would not merely

be a restatement of his ADEA claim.  We stated that the standard for a § 1983 equal protection claim requires proof of purposeful discriminatory conduct.  In a § 1983 equal protection claim, the Plaintiff must show disparate impact plus some additional "indicia of purposeful discrimination." *Pa. v. Flaherty*, 983 F.2d 1267, 1273 (3d Cir. 1993).  We held that Plaintiff's ADEA claim was not congruent and proportional to his § 1983 constitutionally based discrimination claim, and we allowed the § 1983 claim to be asserted in the Plaintiff's Second Amended Complaint. (Doc. 26).

In a § 1983 equal protection claim, the Plaintiff must allege that the Defendants purposely discriminated against him on the basis of his age.  Further, with respect to the § 1983 Equal Protection claim, the Plaintiff must show the Defendants intended to discriminate, either through direct or circumstantial evidence.  In *Pa. v. Flaherty*, 983 F. 2d 1267 (3d Cir. 1993), the Court held that intent is a *prima facie* element of a § 1983 equal protection claim of discrimination.  (citing *Washington v. Davis*, 426 U.S. 229 (1976).  *See also Williams v. Pa. State Police*, 108 F. Supp. 2d 460, 471 (E.D. Pa. 2000). ("to prevail on a § 1983 claim, a plaintiff must prove that the defendant intended to discriminate").  There is a different standard for a constitutionally based civil rights claim of discrimination and a Title VII discrimination claim. *Flaherty*, 983 F. 2d at 1273; *Washington*, 426

US. at 238-39.[14]

In a constitutionally based civil rights claim of discrimination, the Plaintiff must show that the Defendants purposefully discriminated against him due to his age. The Plaintiff may make a *prima facie* showing of discriminatory intent by claiming disparate impact along with another indicia of purposeful discrimination. *Flaherty*, 983 F. 2d at 1273.[15] Thus, in the § 1983 claim, the focus is on the motivation for the defendant's action. In the ADEA claim, the focus is on the effects of the defendant's action on the plaintiff.

In our April 6, 2005 Order allowing Plaintiff to file his Second Amended Complaint and add a § 1938 equal protection claim (Doc. 25), we found that under the *Washington v. Davis* standard of intent, the Plaintiff's proposed Equal Protection claim as originally plead in his proposed Second Amended Complaint contained insufficient allegations of purposeful discrimination by the Defendants. The Plaintiff did not allege that the Defendants intentionally discriminated against him due to his age or that the Defendants' alleged actions were purposefully discriminatory. As the Court in *Flaherty*, 983 F. 2d at 1273, stated "'intent' for purposes of an equal protection claim

---

[14]We note that this Court has recently allowed an amended complaint to be filed alleging a Title VII sex discrimination claim and a § 1983 equal protection claim in a case in which a former police officer alleged that she was forced to leave her job (*i.e.* constructive discharge) due in part to sex discrimination. *See Hartley v. Pocono Mt. Regional Police Dept., et al.*, Civil No. 04-2045, M.D. Pa.

[15]Previously, in support of his Motion to file a Second Amended Complaint, Plaintiff cited to *Smith v. City of Jackson*, 2005 WL 711605 (S.Ct. March 30, 2005), for the Supreme Court's holding that the ADEA covers disparate impact claims just as Title VII does. (Doc. 24, p. 5). In *Smith*, the Court held that the ADEA authorizes disparate impact claims.

means that the [Defendant] 'selected or reaffirmed a particular course of action at least in part *because of,* not merely *in spite of,* its adverse effects upon an identifiable group." (Citations omitted) (emphasis original). In Plaintiff's "Count III" (which should have been Count IV) of his proposed Second Amended Complaint, the Plaintiff did not allege that the Defendants intentionally engaged in a course of conduct which was discriminatory against him based on his age. (Doc. 24, attached Second Amended Complaint ¶'s 22.-25.). However, in Plaintiff's Second Amended Complaint that was then filed in this case, Plaintiff alleged in Count IV that Defendants purposefully discriminated against him based on his age. (Doc. 26, pp. 6-7).

Since we found Plaintiff's equal protection claim of age discrimination under § 1983 required a more specific averment of intent, he was permitted to add this claim to his Second Amended pleading. Therefore, we granted Plaintiff's Motion for Leave to File a Second Amended Complaint and we allowed Plaintiff to file his Second Amended pleading regarding his § 1983 claim.[16] (Doc. 25). As stated, Plaintiff filed his Second Amended Complaint properly pleading a § 1983 equal protection claim. (Doc. 26).

Following our April 6, 2005 Order, the Third Circuit vacated its opinion in *Cochran,* 2005 WL 589434, until the United States Supreme Court decides the consolidated cases of *U.S. v. Georgia,* No. 04-1203 and *Goodman v. Georgia,* No. 04-1236. 412 F. 3d 500 (3d Cir. 6-17-05). We relied on *Cochran* in our Order allowing Plaintiff to amend his pleading to make both an ADEA

---

[16] We noted that leave of court to amend should be freely given. *See* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given"). Plaintiff was thus granted leave to amend his pleading and to redraft his new § 1983 claim to clarify that he was alleging that the Defendants purposefully discriminated against him due to his age. Plaintiff then filed his second amended pleading alleging this. (Doc. 26).

claim and a § 1983 equal protection claim. In any event, we now consider Plaintiff's § 1983 claim against all Defendants based on a summary judgment standard.

In his Summary Judgment Motion, Plaintiff argues that there is no dispute that Defendants purposefully discriminated against him due to his age, and he points to Grigas' deposition testimony to establish this. Grigas testified that PHA indeed had a Mandatory Retirement Age policy which provided that an employee must retire at age 70. There is no dispute that PHA had such a policy. In fact, Defendants have submitted a copy of the 1978 policy which was in effect during the relevant time of this case, *i.e.* April 2004, when Plaintiff became 70 years old. (Doc. 35, Appx. 3). Further, there is no dispute in our case that this policy was applied to Plaintiff and that pursuant to this policy, Plaintiff was terminated from PHA effective on his 70th birthday. (Doc. 33, Ex. 1, NT 35-37, 48). It is also undisputed that the only reason that Plaintiff was terminated was because of his age. (*Id.*). The letter from PHA Solicitor to Plaintiff dated March 9, 2004 further verifies these facts. (Doc. 35, Appx. 6). The PHA knew of the mandatory retirement age policy, and was aware, prior to April 2004, that it was going to be enforced with respect to Plaintiff on his 70th birthday. (Doc. 33, Ex. 1, NT 45-47). The policy was in fact applied to Plaintiff. It was admitted by Defendants that the sole reason Plaintiff was not still working for PHA was because of his age. (*Id.*, NT 48). Moreover, there is no dispute that PHA's mandatory retirement age policy applied equally to all of its employees and that Plaintiff was not singled out for application of the policy.

31

Plaintiff thus argues that there is no dispute that Defendants have discriminated against him solely due to his age, and contends that he is entitled to judgment as a matter of law with respect to his § 1983 equal protection claim. (Doc. 36, p. 13).[17]

The Equal Protection Clause does not require that all persons be treated alike, but instead, a plaintiff must show that the differential treatment to those similarly situated was unreasonable, or involved a fundamental interest or individual discrimination. *Tigner v. Texas,* 310 U.S. 141, 147 (1940); *Price v. Cohen,* 715 F.2d 87, 91 (3d Cir. 1983), *cert. denied,* 465 U.S. 1032 (1984). It is well-settled that a litigant, in order to establish a viable equal protection claim, must show an intentional or purposeful discrimination. *Snowden v. Hughes,* 321 U.S. 1, 8 (1944); *Wilson v. Schillinger,* 761 F.2d 921, 929 (3d Cir. 1985), *cert. denied,* 475 U.S. 1096 (1986); *E & T Realty v. Strickland,* 830 F.2d 1107, 1113-14 (11th Cir. 1987), *cert. denied* 485 U.S. 961 (1988). This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights, and (3) classifications based on social or economic factors. *See, e.g., Britton v. City of Erie,* 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), *aff'd,* 100 F.3d 946 (3d Cir. 1996); *Adams v. McAllister,* 798 F. Supp. 242, 245 (M.D. Pa.), *aff'd.* 972 F.2d 1330 (3d Cir. 1992).

Defendants rely upon the case of *Farmer v. Camden City Bd. of Ed.,* 2005 WL 984376 (D. N.J. 2005), (Doc. 32, pp. 1–1), for their position that the ADEA preempts Plaintiff's § 1983 equal

---

[17]As indicated above, Plaintiff filed a Motion for Partial Summary Judgment in which he states, in part, that there is no factual dispute that Defendants terminated him solely because of his age in violation of § 1983. (Doc. 33 & 34).

protection claim. *Farmer* was decided about two weeks after *Cochran, i.e. Cochran* was decided March 15, 2005, and *Farmer* was decided March 28, 2005. In *Farmer,* an employee and administrator of the Defendant school district sued Defendants asserting age discrimination in violation of the ADEA and § 1983. The *Farmer* Court dismissed Plaintiffs' § 1983 claims since it found that Congress has provided plaintiffs with a comprehensive remedial framework, *i.e.* the ADEA, for their age discrimination claims.

In *Farmer,* the Court recognized that a number of District Courts have held that § 1983 claims asserting an independent constitutional claim of age discrimination can still be pursued in addition to an ADEA claim. *Id.* * 9.[18]

The *Farmer* Court then held that its Plaintiffs did not offer an independent constitutional claim for age discrimination. *Id.* Likewise, in our case, we agree with Defendants (Doc. 32, p. 12), and we find that Plaintiff Alba has not shown an independent constitutional claim for age discrimination. Plaintiff's § 1983 claim (Count IV of Second Amended Complaint, Doc. 26, pp. 6-7) is simply a re-averment of his ADEA claim. Both claims assert, and the undisputed facts show, that Defendants applied PHA's mandatory retirement policy to Plaintiff, that the policy applied to all of PHA's employees, and that Plaintiff was made to leave his position with PHA only because he became 70 years old. However, Plaintiff has not offered an independent constitutional claim for

---

[18]Defendants in their Brief also cite to circuit court cases in which the courts have found that a § 1983 claim was preempted by the ADEA. (Doc. 32, p. 12).

age discrimination.[19]

Moreover, Plaintiff has not shown that he was treated differently than similarly situated individuals, *i.e.* other 70-year-old employees of PHA , on the basis of his age. It is not disputed that Plaintiff was treated the same as other PHA employees who reach the age of 70. Plaintiff does not show that Defendant PHA treated other employees who became 70 years old more favorably than he was treated. Further, as discussed below, the Plaintiff has failed to implicate the violation of a right enforceable in a § 1983 action by Defendants since he had no recognizable entitlement to continued employment with PHA.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

---

[19]The Defendants have acknowledged that the PHA Board approved of Plaintiff's termination and this was well known to Plaintiff as of March 9, 2004, when he was informed of this by letter. (Doc. 35, Appx. 6). The Defendants concede that the PHA Board had a mandatory retirement policy since February 1978, and stated that the Plaintiff was aware of this policy when he was hired. The March 8, 2005 deposition testimony of Defendant Grigas indicated that the entire PHA Board approved of Plaintiff's termination. (Doc. 24, Exhibits A-D).

In *Holocheck*, this Court recently considered a Plaintiff's AEDA, PHRA and § 1983 claims in a case in which Plaintiff, 56, was employed as a teacher by Luzerne County Head Start and was terminated and replaced by a younger person, under 40 years old.  Specifically, with respect to Plaintiff's § 1983 claim, it was alleged, in part, that Plaintiff's termination violated the substantive and procedural aspects of the Fourteenth Amendment due process clause.  This Court held that even if the decision to terminate Plaintiff's employment was made by a person acting under color of state law, "she must show that she was deprived of 'rights, privileges, or immunities secured by the Constitution or laws of the United States.'"  *Holocheck*, 385 F. Supp. 2d at 499 (citing *Kost, supra*).[20]  Plaintiff Holocheck claimed that Pennsylvania law gave her a property interest in her continued employment and that this interest was protected by the Due Process Clause.  This Court reiterated the well-settled view that "a public employee 'held [his] position at the will and pleasure of the [governmental entity] necessarily establishes that [the employee] had no property interest' in the job sufficient to trigger due process concerns." *Id.* (Citations omitted).  The *Holocheck* Court also cited to *Robertson v. Fiore*, 62 F. 3d 596, 601 (3d Cir. 1995) (*per curiam*), "stating that an at-will employee 'lacks a protected property interest in his position within the meaning of the Fourteenth Amendment.'" *Id.*

---

[20]In our case, as mentioned above, the PHA is a non-profit corporation incorporated in Pennsylvania to provide housing for low income families.  PHA is federally funded by HUD.  It receives no money form the City of Pittston.  Defendant Grigas is acting Executive Director of PHA, and Defendant Shovlin is PHA Board President.  Thus, even if Plaintiff could show that he was deprived of a constitutional right, he must also show that Defendants are state actors.  As the *Holocheck* Court noted, if Defendant is a state agency and not a local agency, Plaintiff's ADEA claim in federal court "may be foreclosed by the Eleventh Amendment." *Holocheck*, 385 F. Supp. 2d at 501, n. 3.  However, as in *Holocheck*, since our parties did not address this issue, we shall not. *Id.*

The *Holocheck* Court then cited to the recent Third Circuit Court case of *Elmore v. Learry*, 399 F. 3d 279, 282 (3d Cir. 2005), which held that "a public employee in Pennsylvania generally serves at the pleasure of her employer and thus has no legitimate entitlement to continued employment." *Id.* at 500.  This Court in *Holocheck* concluded that Plaintiff "did not have a property interest in her employment [with Luzerne County Head Start] that was safeguarded by the Fourteenth Amendment due process clause." *Id.* at 501.

Based on *Holocheck*, we find that Plaintiff Alba, even if he did assert a constitutional claim for age discrimination independent from his ADEA claim, has not shown that he was deprived of a constitutional right by Defendants.  As the *Holocheck* Court summarized, "neither state nor federal law clothed Plaintiff's employment with a right enforceable through an action under 42 U.S.C. § 1983." *Id.* at 502.

Accordingly, we will grant Defendants' Summary Judgment Motion **(Doc. 31)** with respect to Plaintiff's ADEA claim (Count I) and § 1983 Equal Protection claim (Count IV). (Doc. 26). We shall decline to exercise supplemental jurisdiction over the Plaintiff's remaining PHRA claims,

36

Counts II and III, since neither of his federal claims, over which we have original jurisdiction, are

going to proceed.[21]   We shall deny Plaintiff's Motion for Partial Summary Judgment. **(Doc. 33)**.

An appropriate Order and Judgment shall be entered.

**THOMAS M. BLEWITT**
**United States Magistrate Judge**

Dated: November 23 2005

---

[21]In Count III of the Second Amended Complaint, Plaintiff alleges that Defendants Grigas and Shovlin are individually liable under the PHRA for "aiding and abetting" PHA when it discharged him due to his age. (Doc. 26, p. 5, 's 20. - 21.).  Plaintiff alleges both individuals were supervisors.  Defendants argue that Plaintiff fails to state a cause of action against Grigas and Shovlin under the PHRA. (Doc. 32, pp. 13-14).

We agree with Plaintiff and find that, based on this Court's very recent case of *Holocheck v. Luzerne Co. Head Start, Inc.*, 385 F.Supp.2d 491, 496-197 (M.D. Pa. 2005), his PHRA claims can proceed against the individual supervisory Defendants.  However, we decline to exercise supplemental jurisdiction over Plaintiff's state PHRA claims, since his federal claims do not remain.

As the Third Circuit Court in *Caufield v. Center Area School Dist.*, 133 Fed.Appx. 4 (3d Cir. 2005), indicated, the district court has original federal question jurisdiction over an ADEA claim and supplemental jurisdiction over state claims under the PHRA, which have the same factual nucleus as the federal claim.

However, since Plaintiff's claims over which we have original jurisdiction are not going to proceed, we decline to exercise supplemental jurisdiction over Plaintiff's PHRA claims.  Thus, these claims will be dismissed without prejudice.  *See* 28 U.S.C. § 1367(c)(3); *Verdecchia*, 274 F.Supp.2d at 728.